Leona **SPILMAN**, Respondent,

v.

**MOREY FISH COMPANY, et al., Relators.**

No. 47894.

Supreme Court of Minnesota.

Sept. 22, 1978.

Peterson, Gray & Sheahan, St. Paul, for relators.

John C. Wallraff, Compensation Atty., St. Paul, for respondent.

PER CURIAM.

Certiorari on the relation of Morey Fish Company and its compensation insurer to review a decision of the Workers' Compensation Court of Appeals awarding Morey's employee, Leona Spilman, compensation for temporary total disability. Contrary to relators' claims, the findings that employee sustained an injury in the course of her employment and that her disability resulted from such injury have sufficient evidentiary support. Accordingly, we affirm.

The record establishes that employee had nonparalytic polio at 19 which caused her back pain then and later would result in her back becoming tired when she worked longer hours than a normal workday. In subsequent years she had some apparently minor difficulties—both work related and non-work related—with her back. Only once, in 1972, was she disabled. At that time she fell at work, suffered a low back injury, and was disabled for 5 weeks. She then returned to work and had no pain within a few more weeks.

Employee did heavy work at Morey's for more than 6 years prior to October 1975. Following a fire in the plant the night of October 13–14, employee worked a 15-hour day on October 14 helping to remove debris, sweep, and clean. Her back felt tired that night. The evidence about her work activities on October 15 was in conflict, but she testified that, after lifting perhaps 50 20-pound to 60-pound boxes of half-frozen fish from the bottom of a freezer, she was unable to raise herself and experienced pain in her low back, thighs, and right hip. In a statement given by employee to Morey's insurer in December 1975, however, she said she could recall no specific incident, but that she had lifted 50-pound pans of fish the morning of October 15, had lifted and moved other merchandise also that day, and had had difficulty with her hip and leg later in the day. She attempted to work on October 16, but could not do so and has been disabled since then.

It is impossible to determine whether the finding that employee sustained a personal injury in the course of her employment was based on her testimony about the specific incident of October 15 or on the evidence of her general work activities on October 14 and 15 and the permissible inference that their cumulative effect was to cause her disability on October 15. In either event, the finding has sufficient evidentiary support. See, *Briggs v. McKee*, Minn., 259 N.W.2d 266 (1977); *Meyers v. Electro-Static Finishing, Inc.,* 303 Minn. 508, 230 N.W.2d 24 (1975). Although relators insist that employee was not credible, the assessment of witnesses' credibility is for the trier of fact. *Meyer v. Abel Signs,* 306 Minn. 55, 236 N.W.2d 774 (1975); *Dotstry v. Radisson Hotel*, 266 N.W.2d 716 (Minn.1968).

Relators contend also that the deposition testimony of Dr. Edward LaFond, the orthopedic surgeon who treated employee, did not permit the determination that employee's disability was causally related to her work activities. Dr. LaFond diagnosed her condition as an acute lumbar strain. He expressed the opinion, based on the history given him by employee,[1] his examination of her, and his experience, that her symptoms were "related to her work activities" and that there was "a definite association" between her condition and her work. Although relators urge that this testimony did not express the opinion that employee's work activities caused her disability, we believe that the court of appeals properly interpreted the testimony as sufficiently expressing the doctor's opinion to that effect. See, *Sullivan v. Hagstrom Const. Co.,* 244 Minn. 271, 69 N.W.2d 805 (1955); *Boldt v. Josten's Inc.,* Minn., 261 N.W.2d 92 (1977).

Affirmed.

OTIS, Justice (dissenting).

This is a claim for benefits arising out of a specific personal injury which the employ-

---

1. Employee had informed Dr. LaFond of the polio and had said that there "were no serious episodes of back pain otherwise" except for the work injury in 1972. Although the doctor said on cross-examination that he had not been in-formed of several earlier episodes of back difficulty, he repeated his understanding that employee had been "doing some heavy lifting" at her work and he did not modify the opinions expressed in his earlier testimony.

ee alleges occurred on October 15, 1975, when she "slipped on [a] piece of fish injuring [her] back", while employed by relators.

The court of appeals acknowledges it is a "borderline" case but affirms the findings of the compensation judge that on October 15, 1975, the employee was injured in the course of her employment. This court now holds that it is impossible to determine whether the court of appeals found the injury occurred from a specific incident October 15 or was the cumulative effect of activities October 14 and 15. Notwithstanding the fact the only *claim* the employee made was that she slipped on a piece of fish on *October 15,* this court sustains a finding that benefits will be awarded for a wholly different disability arising out of her testimony she had been lifting heavy crates on October 14 and 15.

Although the employee *testified* she slipped and injured her back on *October 1,* 1975, she made no complaint of back injury at the time and missed no work. Nor did she mention any back problems to her physician on October 28, in discussing with him the October 1 incident or mention the matter when hospitalized November 12. In December she told another physician that she had no back problems prior to October 14.

The injury which she claims occurred on October 15 while lifting a box was not seen or verified by any coworkers in a position to observe her at work, and she made no mention of the incident to her employer or to others when subsequently hospitalized on two occasions.

On direct examination the employee revealed only one prior back injury. When confronted with medical records she conceded that she had had polio at 19; had been hospitalized in 1969 for treatment of her back; in 1970 and 1971 she was treated for low back pain; and in 1974 was an outpatient at a hospital as a result of falling from a ladder, injuring her hip and back.

I submit that unless the rules imposing on claimants the burden of proof, and the necessity for sustaining that burden by a fair preponderance of evidence, are to be totally abrogated in workers compensation matters, this "borderline" case should be reversed.

PETERSON, Justice (dissenting).

I join in the dissent of Mr. Justice Otis.