Robert E. SCHAEFER, Respondent,

v.

**DUNWOODY INDUSTRIAL INSTITUTE and American Mutual Liability Insurance Company, Relators,**

**General Industrial Supply Company and Employers Mutual Liability Insurance Company of Wisconsin, Relators.**

Nos. 49113, 49124.

Supreme Court of Minnesota.

June 8, 1979.

Van Eps & Gilmore and Michael D. Aafedt, Minneapolis, for Dunwoody Industrial Inst. et al.

Ochs, Larsen, Klimek & Olson and Candice E. Hektner, Minneapolis, for General Industrial Supply Co.

Richard C. Smith, Minneapolis, for respondent.

TODD, Justice.

Certiorari to review a decision of the Workers' Compensation Court of Appeals awarding employee continuing temporary total disability from October 20, 1975. Relators, Dunwoody Industrial Institute, General Industrial Supply Company, and their compensation insurers, challenge the finding that work-related back injuries contributed substantially to employee's disability. Having concluded that the finding has sufficient evidentiary support, we affirm.

Relators' contention is that the evidence compels the conclusion that the only substantial cause of employee's disability is a severe cardiac condition.[1] There is no question that employee has suffered heart disease since October 20, 1975, the date from which he sought compensation in this proceeding. The record, however, also supports the finding that his back injuries have contributed substantially to his disability.

Employee first injured his back in 1945, when he was 17 years old, apparently without permanent effect. In 1957, he again injured his back and felt pain in his midback and also his legs. He had continuing difficulty after this injury and underwent a laminectomy at the L4–5 interspace in August 1959.

He began work for Dunwoody in 1965 as a shipping and receiving clerk. On May 6, 1970, he felt pain in his middle back and right side while helping load a desk onto a truck. He was hospitalized for 10 days and treated by Dr. Malvin J. Nydahl, who pre-scribed a back brace and pain medication. Although he returned to work in spite of some problems with his legs, on October 28, 1970, he awoke with severe pain in his low back and legs, and in November 1970 Dr. Nydahl performed a second laminectomy at the same level. Employee returned to work in December but continued to have pain in his back and legs and cramps in his legs. He was hospitalized for 17 days in January 1972 because of his back, and then went back to work, but continued to have back and leg problems.

On November 20, 1972, an hour and a half after lifting containers weighing from 25 to 60 pounds apiece from the floor to a cart, employee experienced pain in his legs, low back, upper back, and shoulder and arm. He doubled his usual dose of medication and finished his shift, but he awoke during the night because his back was extremely painful. Twenty minutes later he experienced symptoms indicative of a myocardial infarction. He was hospitalized, an infarction was diagnosed, and he remained in the hospital until January 31, 1973. He had worse back pain during this time. He was told on February 16, 1973, that he could try light work. Dunwoody had no suitable job so he worked in a store for a time, did office work elsewhere, and obtained office work in September 1973 with General Industrial.

On September 29, while assembling sales brochures into a catalog, a job in which he knelt, reached, bent, and used a punch, employee experienced a shooting pain in his back and pain and cramps in his legs. He felt worse by the end of the workday, suffered a second heart attack that night, and was again hospitalized. Some weeks later he underwent a coronary bypass. While hospitalized, he received some treatment for his back also and on November 11, 1973, was released wearing a back brace. He was again in the hospital later that month because of severe back pain and was then

---

1. An award based on stipulation for settlement of an earlier compensation claim, issued on July 15, 1975, forecloses assertion of any claim for compensation based on employee's heart condition.

fitted with a "Stim-Tech," a pain stimulator. He continued to have pain in his low back and legs, but improved gradually.

By April 1974 he said his back was about the same as it had been in April 1973. At that time he went to work for another employer as a claims examiner. He also worked several months part time as a janitor. He said his back and leg problems continued and he felt better when he did not sit more than an hour at a time. On October 7, 1975, while making a business telephone call at his desk he developed a chest pain. He was hospitalized that night with chest, back, and leg pains, and remained in the hospital for a week. He had been hospitalized for short periods several times since for his heart condition and has had several outpatient treatments, some for heart problems and some for his back. He had not returned to work at the time of the hearing and apparently has undergone a second by-pass operation. He testified in September 1977 that he has leg pains and muscle cramps if he walks 4 or 5 blocks, numbness in the right leg and foot, and back pain far worse than it had been in October 1975 because it is more intense and almost constant. He said he has pain upon doing almost any activity and has difficulty on stairs.

Dr. Robert A. Wengler, an orthopedic surgeon, treated employee at fairly regular intervals since November 1971 except between October 1974 and November 1976. He testified that the surgery in 1970, performed to fuse the spine from the fourth lumbar vertebra to the sacrum, had resulted in a solid fusion only between the fifth lumbar vertebra and the sacrum, and that employee has a chronic lumbar disc syndrome with a spondylolisthesis and pseudoarthrosis of the fusion of the L4–5 level. In his opinion, the incidents of May 6, 1970, November 20, 1972, and the work of September 28, 1973, had each resulted in substantial injury to employee's spine and a substantial increase in disability, although he conceded that if employee's back was in the condition in April 1974 that it had been in April 1973, the September 1973 injury would have been a temporary aggravation of his condition. It was also Dr. Wengler's opinion that employee was temporarily totally disabled. Asked if he could separate the contribution of the heart and back problems to employee's inability to work, Dr. Wengler said:

"I think in all fairness to the patient I would have to conclude he is for all intents and purposes totally disabled by virtue of his low back problems, except for certain specific work situations that could be prepared for him. I think in October of 1975 the light desk work activities really even proved to be too much for him. There's no question but that he has real substantial pathology in his back which, I think, by itself should be considered totally disabling."

Dr. Wengler also said that the imperfect fusion could be repaired except for employee's other health problems.

Dr. David Johnson, a neurosurgeon, examined employee December 2, 1974, and August 30, 1977, for Dunwoody and its insurer. He expressed the opinion that employee was not totally disabled because of his back and could do office work if his heart condition permitted. He said the causes of employee's present back troubles were the laminectomies and fusion and not the injury in November 1972 or the incident in September 1973. He thought the episode in September 1973 was a contributing factor if employee then had had an onset of severe pain. If his condition had reverted by April 1974 to what it had been in April 1973, he agreed it was a temporary aggravation. He agreed that the fusion could be repaired if employee did not have other health problems.

Dr. Michael Davis, also an orthopedic surgeon, examined employee in September 1977 for General and its insurer. He ascribed employee's present disability to both his back and heart conditions and expressed the opinion that they could not be separated. He thought that if employee had only the back problem he could work at a very sedentary job in which he was allowed to move about for short periods to keep his

back loose. He also thought the disability sustained in the September 1973 work was substantially greater than it would otherwise have been because of the prior injuries and that the episode was a minor contributing factor in employee's disability.

Records of employee's numerous hospitalizations were also placed in evidence. They disclose a conference by employee with a specialist in physical medicine and rehabilitation on April 5, 1974, because of a chronic problem with his back and steady lower back pain which was aggravated by climbing stairs and by standing; an entry on November 19, 1976, indicating continuing back pain and right radiculopathy and sciatica progressive over the past year; 31 outpatient visits by employee from September 7, 1975, through October 14, 1977, 12 relating to his back and the rest to his heart problems; and six admissions for brief periods because of heart problems.

On this evidence the compensation judge determined that employee had sustained a compensable personal injury on November 20, 1972,[2] and found that it and the other work-related injuries had contributed substantially to his disability. On appeal the court of appeals, while viewing the case as close, unanimously affirmed that determination.

 If the finding that the work-related injuries contributed substantially to employee's disability has sufficient evidentiary support, that contribution entitles him to compensation. See, *Roman v. Minneapolis St. Ry. Co.*, 268 Minn. 367, 129 N.W.2d 550 (1964).

 In reviewing this crucial finding, we apply the well-established principles that findings of the court of appeals are entitled to great weight and will not be disturbed unless unsupported by substantial evidence in view of the entire record, *Greene v. W & W Generator Rebuilders*, 302 Minn. 542, 224 N.W.2d 157 (1974), and that resolution of conflicts in the opinions of medical experts is for the court of appeals as the trier of fact. *Stotz v. Sabin Broth-*

*ers*, 257 N.W.2d 359 (Minn.1977). Tested by these principles, the determination that employee's work-related injuries have contributed substantially to his present disability must be sustained. His testimony in September 1977 about the extent of his back pain and the inability of his back to tolerate normal activity, which the court of appeals may well have credited because of his remarkable persistence in trying to work through years of increasing disability, and the opinion of Dr. Wengler furnish substantial support for the finding.

Employee is awarded attorneys fees of $350.

Affirmed.

---

2. The occurrence of the injuries of May 6, 1970, and September 29, 1973, was not contested.